THE LAW OFFICE OF KEVIN M. WELCH
Kevin M. Welch, (SBN 254565)
*Kevin@kmwlawoffice.com*
P.O. Box 494
Hermosa Beach, CA 90245
Tel.: (310) 929-0553
Fax: (310) 698-1626

Attorney for the Plaintiffs,
Pacific Coast Cheer, Inc., *et al*.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| PACIFIC COAST CHEER, INC., a California corporation, JEFFERY DOHRMAN, an individual and resident of the State of California,<br><br>Plaintiffs,<br><br>v.<br><br>SC CHEER COMPANY, LLC, a California limited liability company, NIKKI LITTLE-ALCAZAR, an individual and resident of the State of California, JORDAN ALCAZAR, an individual and resident of the State of California, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:<br>**COMPLAINT FOR DAMAGES FOR:**<br><br>**(1) INFRINGEMENT OF FEDERALLY REGISTERED TRADEMARK (15 U.S.C. §1114; Lanham Act §32);**<br><br>**(2) FEDERAL COUNTERFEITING (15 U.S.C. 1114(1)(a), 1116(d))**<br><br>**(3) FEDERAL UNFAIR COMPETITION (15 U.S.C. §1125(a); Lanham Act §43(a));**<br><br>**(4) COMMON LAW TRADEMARK INFRINGEMENT(15 U.S.C. §1125);**<br><br>**(5) COMMON LAW UNFAIR COMPETITION;**<br><br>**(6) CALIFORNIA UNFAIR COMPETITION (Cal. Bus. & Prof. Code §17200);**<br><br>**(7) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS;**<br><br>**(8) INTENTIONAL INTERFERENCE WITH PROESPECTIVE ECONOMIC RELATIONS; and**<br><br>**(9) CONVERSION.**<br><br>**DEMAND FOR JURY TRIAL** |

1      Plaintiffs, PACIFIC COAST CHEER, INC. and JEFF DOHRMAN

2  (together "Plaintiffs") by and for their Complaint for Damages, hereby allege on

3  personal knowledge as to their own actions, and upon information and belief as to

4  the actions of others, as follows:

5                           **INTRODUCTION**

6      1.     This is an action in law and equity for, *inter alia*, federal and common

7  law trademark infringement, federal counterfeiting, federal, state and common law

8  unfair competition, intentional interference with contractual relations and

9  prospective economic relations, and conversion in relation to the unlawful

10  commandeering of Plaintiffs' trademarks and associated goodwill, and the entire

11  Irvine branch location of Plaintiffs' business by former employees, Defendants

12  Nikki Little-Alcazar ("Nikki") and Defendant Jordan Alcazar ("Jordan").

13      2.     Pacific Coast Cheer, Inc. ("PCC") is a gymnasium in the business of

14  coaching and training competitive and noncompetitive cheerleading, dance, tumble

15  and stunting with locations in Murrieta and Irvine.

16      3.     PCC is the owner of two federally registered trademarks, PACIFIC

17  COAST MAGIC (reg. no. 4674678) and PCM (reg. no. 4678045) both for

18  *cheerleading and cheerleading spirit clothing, namely, collared shirts, t-shirts,*

19  *sweatshirts, hooded sweatshirts, shorts, jackets, hats, and sports bras* in

20  international class 025.

21      4.     PCC is also the owner of the common law trademarks, PACIFIC

22  COAST MAGIC and PCM for *instruction, coaching, and training competitive and*

23  *noncompetitive cheerleading, dance, tumble, and stunting.* (together with the

24  marks set forth in Paragraph 3, the "PCC Trademarks").

25      5.     Plaintiff Jeffrey Dohrman ("Jeff") is currently the sole owner of PCC,

26  including both the Murrieta and Irvine branch locations.

27      6.     Jeff was not always the sole owner of PCC; when PCC was

28  incorporated in September of 2005 it was 100% owned by husband and wife

1  founders, Jarret Elliott ("Jarrett") and Kellie Elliott ("Kellie") (together "the

2  Elliotts").

3      7.    Jeff's ownership of PCC began on or about 2018 when the Elliotts

4  sold Jeff and Jeff's wife Kaitlyn Dohrman ("Kaitlyn") (together "the Dohrmans") a

5  seventy percent (70%) ownership interest in PCC.

6      8.    In November of 2019, Jeff's wife Kaitlyn tragically passed away.

7      9.    Shortly thereafter, in December of 2019, the Elliotts sold their

8  remaining 30% ownership interest in PCC to Jeff leaving Jeff as the sole owner of

9  a 100% interest in PCC.

10      10.    Defendants Nikki Little-Alcazar and Jordan Alcazar first became

11  associated with PCC when they were hired as coaches back in 2016.

12      11.    On or about 2018, both Nikki and Jordan left their employment with

13  PCC to pursue other employment opportunities in the same field in Chicago.

14      12.    On or about  May of 2019, they both returned to California when they

15  were offered an opportunity to manage the Irvine branch location of PCC as

16  employees with the possibility of gaining an ownership interest in the company

17  based on their ability to increase the performance of PCC's Irvine branch location,

18  specifically the contemplated proposal involved Nikki and Jordan being offered the

19  possibility of being awarded varying percentages of ownership contingent on

20  meeting specific enrollment and performance benchmarks.

21      13.    Upon their return to employment with PCC (in May of 2019), Nikki

22  and Jordan continued their negotiations with the owners of PCC (the Elliotts and

23  Dohrmans) regarding the specific terms of the contingent ownership offer;

24  however, ultimately no deal was ever finalized, and no contract was ever signed.

25      14.    Further, none of the performance benchmarks proposed or

26  contemplated during the negotiations were ever achieved.

27      15.    In June of 2019, shortly after Nikki and Jordan returned, PCC decided

28  to switch software scheduling and accounting systems from a system called

1 "Jackrabbit Class" to a system called "iClassPro," and Nikki and Jordon used the

2 transition and their position as managers or the Irvine branch location as an

3 opportunity to unilaterally redirected all the revenue from the Irvine branch

4 location of PCC into a bank account that was not owned or managed by PCC, this

5 was done without the authorization or notice to the owners of PCC.

6       16.    By the time it was discovered that revenue of the Irvine branch

7 location revenue was being redirected, Jeff was fully preoccupied by the

8 unexpected passing of his wife (who passed in November of 2019) and the exit of

9 the Elliots as business partners (who sold their last 30% interest in December of

10 2019), so it was not until Jeff's accountant inquired about the missing revenue

11 from the Irvine branch location of PCC when preparing PCC's 2019 taxes and

12 informed Jeff that he could be responsible for the taxes on such missing revenue

13 that Jeff began inquiring about the missing revenue and how Defendants were

14 behaving.

15       17.    It was through these inquires and the 2019 tax issue that Jeff

16 discovered that Nikki and Jordan had created their own limited liability company,

17 SC Cheer Company, LLC ("SCCC"), almost immediately upon returning in March

18 of 2019 and proceeded to operate as if the Irvine branch location of PCC was

19 belonged to SCCC, despite the fact that no purchase agreement was ever been

20 reached, no contract was ever signed, no performance benchmarks where ever

21 agreed upon, no unagreed upon proposed performance benchmarks where ever

22 reached, and no money was ever paid to acquire an ownership interest in the Irvine

23 branch location.

24       18.    In March of 2020, PCC had to shut down due to the COVID pandemic

25 which, like many businesses took priority other matters.

26       19.    In June of 2020, Nikki, Jordan, and Jeff met to discuss possible

27 resolutions to this matter including the possibility of Nikki and Jordan purchasing

28 the Irvine branch location, including the mats and other equipment owned by PCC

that was located in the Irvine branch location; however, no agreement was ever reached and no contract was ever signed.

20.    Nikki and Jordan also expressed an interest in entering in a licensing agreement whereby they could continue to operate as a franchise location of PCC and continue to use the PCC Trademarks but Jeff expressly rejected that idea and so no licensing agreement was ever offered, and no contract was ever signed.

21.    Subsequently, in July of 2020 discussion, settlement negotiations broke down completely and Plaintiffs instructed Defendants to cease and desist behaving as if they owned the Irvine branch location of PCC and that Defendants did not have permission to use of PCC equipment that was located in the Irvine branch location of PCC, and that Defendants must cease and desist using the PCC Trademarks.

22.    On or about August of 2020, Jeff's daughter Chelsie Horton, who began managing PCC for her father, attempted to visit the Irvine branch location of PCC which, at the time, was located in a building leased to PCC and was turned away by Defendants and told not to return.

23.    In February of 2021, Jeff engaged in further discussions with Nikki and Jordan in an attempt to resolve this matter amicably.  The parties discussed possible resolutions to the matter including the possibility of Nikki and Jordan purchasing the Irvine branch location, including the mats and other equipment owned by PCC that was located in the Irvine branch location; however, once again negotiations failed and no agreement was reached and no contract was signed.

24.    Defendants continued to present themselves as if they were part of PCC by using the PCC Trademarks and providing students with contracts stating that the students were contracting with PCC while retaining all the revenue from paid by students in their newly formed company SCCC, essentially commandeering the Irvine branch location of PCC through a pattern of spurious and intentional unlawful acts.

25.     Still further, on information and belief, to this day Defendants are still
purporting to operate under an insurance policy issued to PCC and paid for by
PCC, and until their recent move, the building out of which Defendants were
operating was leased by PCC.

26.     Plaintiffs are informed and believe, and based thereon allege, that
Defendants' infringing activity is systematic and willful, or done with reckless
disregard for Plaintiffs' intellectual property rights, and ask that this Court enjoin
Defendants' unlawful activities and pay appropriate costs, damages, and attorneys
fees pursuant to the above referenced federal and state statutes and common law.

## THE PARTIES

27.     Plaintiff PACIFIC COAST CHEER, INC. ("PCC") is a corporation
formed under the laws of the State of California that maintains a principle place of
business at 41865 Hawthorn St., Murrieta, CA 92562.

28.     Plaintiff JEFFREY DOHRMAN, the sole owner of PCC, is an
individual and resident of the State of California who maintains a residence at
41865 Hawthorn St., Murrieta, CA 92562.

29.     Upon information and belief, Defendant SC CHEER COMPANY,
LLC ("SCCC") is a limited liability company formed under the laws of the State of
California that maintains a principle place of business at 2901 Daimler St., Santa
Ana, CA 92705.

30.     Upon information and belief, NIKKI LITTLE-ALCAZAR, is an
individual and resident of the State of California who maintains a residence at
21022 Los Alisos Blvd., #311, Rancho Santa Margarita, CA 92668.

31.     Upon information and belief, JORDAN ALCAZAR, is an individual
and resident of the State of California who maintains a residence at 21022 Los
Alisos Blvd., #311, Rancho Santa Margarita, CA 92668.

32.     The true names, and identities or capacities, whether individual,
associate, corporate or otherwise of DOES 1 through 10, inclusive, are unknown to

Plaintiffs, who therefore sues said defendants by fictitious names. Plaintiffs are informed and believe, and on such information and belief, allege that each of the Defendants sued herein as a DOE are legally responsible in some manner for the events and happenings referred herein. When the true names, identities and capacities of such fictitiously designated defendants are ascertained, Plaintiffs will ask leave of the Court to amend this Complaint to insert said true names, identities and capacities, together with proper charging allegations.

## JURIDISCTION AND VENUE

33.     This is an action seeking permanent injunctive relief, monetary remedies, other equitable remedies, and attorneys' fees based on the federal and common law trademark infringement, federal counterfeiting, federal, state and common law unfair competition, intentional interference with contractual relations and prospective economic relations, and conversion by Defendants in connection with the Irvine branch location of PCC and the PCC Trademarks. The harm from these unlawful acts have occurred in the State of California, and more specifically in the Central District of California.

34.     This Court has subject matter jurisdiction over this lawsuit pursuant to 15 U.S.C. §§ 1121 and 1125(a) and 28 U.S.C. §§1331, 1338, and 1367, and pursuant to the Court's pendent jurisdiction.

35.     This Court has jurisdiction over Defendant SC CHEER COMPANY, LLC because, *inter alia,* defendant is a limited liability company formed under the laws of the State of California, conducts business within the State of California and within the Central District, maintains a principle place of business within the State of California and within the Central District, and has committed intentional acts in this judicial district upon which the claims asserted in this lawsuit are based.

36.     This Court has jurisdiction over Defendant NIKKI LITTLE-ALCAZAR and Defendant JORDAN ALCAZAR because, *inter alia,* both

1    defendants reside within the State of California and within the Central District,

2    conduct business within the State of California and the Central District, and have

3    committed intentional acts in this judicial district upon which the claims asserted in

4    this lawsuit are based.

5         37.    Venue is proper in the Central District of California pursuant to 28

6    U.S.C. §§1391(b), (c).

7

8    

**COUNT I**
**INFRINGEMENT OF FEDERALLY REGISTERED TRADEMARK**

9    **15 U.S.C. §1114 (LANHAM ACT §32)**

10        38.    Plaintiffs hereby incorporate by reference each and every allegation

11   contained in paragraphs 1 through 37 as though fully set forth herein, and make the

12   following allegations on information and belief.

13        39.    Plaintiffs are the owner of U.S. federal trademark registration no.:

14   4674678 for the mark PACIFIC COAST MAGIC for: *cheerleading and*

15   *cheerleading spirit clothing, namely, collared shirts, t-shirts, sweatshirts, hooded*

16   *sweatshirts, shorts, jackets, hats, and sports bras.*

17        40.    Plaintiffs are the owner of U.S. federal trademark registration no.:

18   4678045 for the mark PCM for: *cheerleading and cheerleading spirit clothing,*

19   *namely, collared shirts, t-shirts, sweatshirts, hooded sweatshirts, shorts, jackets,*

20   *hats, and sports bras.*

21        41.    Plaintiffs' U.S. federal trademark registrations, nos.: 4674678 and

22   4678045, are both valid, subsisting, and in full force and effect.

23        42.    Plaintiffs' U.S. federal trademark registrations, nos.: 4674678 and

24   4678045, have both reached incontestable status.

25        43.    Defendants' are actively advertising and selling a variety of

26   *cheerleading and cheerleading spirit clothing* and related goods in person and on

27   the Internet through their website *www.pcmirvine.myshopify.com* prominently

28   featuring Plaintiffs' U.S. federally registered trademarks and/or confusingly similar

1  variations thereof.

2      44.    Defendants do not have the authority or consent of Plaintiffs to

3  advertise or sell *cheerleading and cheerleading spirit clothing* or related goods in

4  person or on the Internet through their website *www.pcmirvine.myshopify.com* that

5  prominently feature Plaintiffs' U.S. federally registered trademarks and/or

6  confusingly similar variations thereof.

7      45.    Defendants' conduct is likely to cause confusion, to cause mistake or

8  to deceive customers as to the origin, source, or sponsorship of Defendants' goods

9  and services, and is likely to create the false impression that Defendants' goods

10  and services are authorized, sponsored, endorsed, or licensed by, or affiliated with,

11  Plaintiffs.

12      46.    Defendants' conduct is willful, in bad faith, and with full knowledge

13  that Defendants have no right, license, or authority to use Plaintiffs' federally

14  registered trademarks, and/or any other designation similar thereto.

15      47.    Defendants' conduct is intended to reap the benefit of the goodwill

16  that Plaintiffs have amassed in the PCC Trademarks marks, and constitutes

17  infringement of Plaintiffs' federally registered trademarks in violation of §32(1) of

18  the Lanham Act, 15 U.S.C. §1114(1).

19      48.    Because Defendants are using the trademarks that are identical, and

20  therefore, confusingly similar to the Plaintiffs' trademarks in connection with U.S.

21  commerce in an unauthorized manner, Defendants have caused and are causing

22  substantial irreparable harm to the goodwill associated with Plaintiffs' federally

23  registered trademarks and will continue to damage Plaintiffs, and to deceive

24  consumers unless enjoined by this Court.

25      49.    Plaintiffs have no adequate remedy at law to address the continued

26  harm to its reputation and goodwill caused by Defendants' continued use of marks

27  in commerce that are identical to, and therefore confusingly similar to, Plaintiffs'

28  U.S. federally registered trademarks.

## COUNT II
## FEDERAL COUNTERFEITING
### 15 U.S.C. 1114(1)(a), 1116(d)

50.    Plaintiffs hereby incorporate by reference each and every allegation contained in paragraphs 1 through 49 as though fully set forth herein, and makes the following allegation on information and belief.

51.    Plaintiffs are the owners of the U.S. federally registered trademarks PACIFIC COAST MAGIC and PCM, reg. no.: 4674678 and 4678045, respectively.

52.    Defendants are intentionally presenting themselves to customers and the world as if they are in fact Plaintiff PCC or affiliated with Plaintiff PCC, and Defendants are intentionally advertising, offering for sale, and selling goods in conjunction with the PCC Trademarks such that customers and the world will believe such good are genuinely originating from or affiliated with Plaintiff PCC.

53.    Defendants are intentionally advertising, offering for sale, and selling goods on the Internet and in person in conjunction with the PCC Trademarks without the authorization or permission from Plaintiffs.

54.    Defendants' use of the PCC Trademarks is spurious and constitutes intentional acts to benefit from the goodwill, popularity, reputation, and demand for goods associated with the Plaintiff PCC.

55.    Defendants are currently, and have at all times relevant to this action, been aware that the trademarks PACIFIC COAST MAGIC and PCM are owned by Plaintiffs and that Defendants do not have Plaintiff's authorization or permission to use the PCC Trademarks.

56.    Plaintiffs have no adequate remedy at law to address the continued harm to its reputation and goodwill caused by Defendants' continuous sale and offer for sale of counterfeit goods.

## COUNT III
## FEDERAL UNFAIR COMPETITION
## 15 U.S.C. §1125(a) (LANHAM ACT §43(a))

57.     Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 56 as if fully set forth herein.

58.     The conduct of Defendants is likely to cause confusion, to cause mistake or to deceive consumers as to the origin, source, or sponsorship of the services provided by Defendants, and is likely to create the false impression that such services are authorized, sponsored, endorsed or licensed by, or affiliated with Plaintiffs, the owner of the PCC Trademarks, and is generally unfair, deceptive and below the standard of ethical business conduct.

59.     The conduct of Defendants constitutes unfair competition, false designation of origin, false advertising, false representation of fact, and false description in violation of §42(a) of the Lanham Act, 15 U.S.C. §1125(a).

60.     Because Defendants are using identical and/or confusingly similar trademarks to the PCC Trademarks in connection with identical and/or similar good in U.S. commerce in an unauthorized manner, Defendants have caused and are causing substantial irreparable harm to Plaintiffs will continue to damage Plaintiffs, and to deceive consumers, unless enjoined by this Court.

61.     Plaintiffs have no adequate remedy at law to address the continued harm to its reputation and goodwill caused by Defendants' continued deceptive and unlawful behavior.

## COUNT IV
## COMMON LAW TRADEMARK INFRINGEMENT

62.     Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 61 as if fully set forth herein.

63.     Plaintiffs have used the trademarks, PACIFIC COAST MAGIC and PCM, in United States commerce in conjunction with *instruction, coaching, and*

1   *training competitive and noncompetitive cheerleading, dance, tumble, and*

2   *stunting,* as well as, *cheerleading and cheerleading spirit clothing, namely,*

3   *collared shirts, t-shirts, sweatshirts, hooded sweatshirts, shorts, jackets, hats, and*

4   *sports bras,* continuously, since at least as early as May of 2005.

5         64.    Plaintiffs' trademarks, PACIFIC COAST MAGIC and PCM are

6   inherently distinctive; therefore, common law trademark rights vested with

7   Plaintiffs as soon as Plaintiffs began using the trademarks in U.S. commerce.

8         65.    With full knowledge of Plaintiffs' trademarks, PACIFIC COAST

9   MAGIC and PCM, Defendants intentionally began using identical and/or

10  confusingly similar marks in U.S. commerce in conjunction with identical and/or

11  confusingly similar goods and services.

12        66.    Because Defendants were aware that Plaintiffs owned the trademarks,

13  PACIFIC COAST MAGIC and PCM and that Defendants had no right to use the

14  marks independently, Defendants' unlawful use of such marks vested Defendants

15  with no common law trademarks rights.

16        67.    Plaintiffs are the senior user with respect to Defendants with regards

17  to the common law trademarks, PACIFIC COAST MAGIC and PCM.

18        68.    The conduct of Defendants is likely to cause confusion, to cause

19  mistake, and to deceive customers as to the origin, source, or sponsorship of

20  Defendants' goods and services, and is likely to create the false impression that

21  Defendants' goods and services are authorized, sponsored, endorsed or licensed by,

22  or affiliated with Plaintiffs.

23        69.    Defendants had actual knowledge of Plaintiffs' exclusive rights in its

24  trademarks, PACIFIC COAST MAGIC and PCM prior to using the confusingly

25  similar or identical marks in U.S. commerce.

26        70.    The conduct of Defendants is willful, intentional, in bad faith, and

27  with full knowledge that Defendants have no right, license or authority to use

28  Plaintiffs' trademarks or any other designation similar thereto.

71.    The conduct of Defendants is intended to reap the benefits of the goodwill that Plaintiffs have created in its trademarks, and constitutes an infringement of Plaintiffs' trademarks.

72.    Because Defendants are using the trademarks PACIFIC COAST MAGIC and PCM in connection with identical goods and services sold on the Internet and provided in person in an unauthorized manner, Defendants have caused and are causing substantial irreparable harm to the distinctiveness and goodwill associated with Plaintiffs' common law trademarks and will continue to damage Plaintiffs, and to deceive consumers, unless enjoined by this Court.

73.    Plaintiffs have no adequate remedy at law to address the continued harm to its reputation and goodwill caused by Defendants' continued use of the trademarks, PACIFIC COAST MAGIC and/or PCM and/or any other confusingly similar variation, in U.S. commerce.

## COUNT V
## COMMON LAW UNFAIR COMPETITION

74.    Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 73 as if fully set forth herein.

75.    The unlawful conduct of Defendants is likely to continue to cause confusion, to cause mistake and deceive consumers as to the origin, source, or sponsorship of goods provided by Defendants in connection with the PCC Trademarks and is likely to create the false impression that the services provided by Defendants are sponsored by or affiliated with Plaintiffs.

76.    Defendants conduct unfairly reaps the benefit of the goodwill and reputation accumulated over years of successful business efforts by PCC, and therefore, constitutes unfair competition in violation of the common law of the State of California and the United States because it falls well below the standard ethical standards of lawful business behavior.

COMPLAINT FOR DAMAGES – Page 13

77.     The conduct of Defendants is willful, in bad faith, and with full knowledge that Defendants have no right, license or authority to use the PCC Trademarks or any other designation confusingly similar thereto.

78.     Because Defendants are using the PCC Trademarks in connection with the sale or offer for sale of identical goods and services, Defendants have caused and are causing substantial irreparable harm to Plaintiffs and will continue to damage Plaintiffs, and to deceive the consuming public, unless restrained and permanently enjoined by this Court.

79.     Plaintiffs have no adequate remedy at law to address the continued harm to its reputation and goodwill caused by the Defendants' continued use of unfair business practices.

## COUNT VI
## CALIFORNIA UNFAIR COMPETITION
## Cal. Bus. & Prof. Code §17200

80.     Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 79 as if fully set forth herein.

81.     The unlawful conduct of Defendants, as alleged above, also constitute unfair, unlawful, and fraudulent business practices in violation of California Business and Professions Code § 17200, et seq.

82.     The wrongful acts of Defendants, including infringing the PCC Trademark and unlawfully commandeering the Irvine branch location of PCC, proximately caused, and will continue to cause substantial injury to Plaintiffs including confusion of potential customers, injury to reputation, and diminution of the value of the PCC Trademarks.  These actions will cause increasing imminent irreparable harm and injury to Plaintiffs, the amount of which has not been ascertained, if Defendants' acts are allowed to continue.

83.     As a direct and proximate result of the wrongful acts of Defendants, Plaintiffs have been damaged, and are entitled to injunctive relief and restitution in an amount proven at trial.  The acts of Defendants' described herein irreparably

1   injure Plaintiffs' business, reputation and goodwill, and will continue to do so
2   unless restrained and permanently enjoined by this Court.

3        84.    Plaintiffs have no adequate remedy at law to address the continued
4   harm to its reputation and goodwill caused by Defendants' continued use of
5   trademarks in commerce that are identical ad/or confusingly similar to the PCC
6   trademarks.

7
8   **COUNT VII**<br>**INTENTIONAL INTERFERENCE WITH**<br>**CONTRACTUAL RELATIONS**
9

10        85.    Plaintiffs repeat and incorporate by reference the allegations contained
11   in paragraphs 1 through 84 as if fully set forth herein.

12        86.    For several years, Plaintiffs have engaged in annual contracts with
13   each student that is enrolled with PCC for *instruction, coaching, and training*
14   *competitive and noncompetitive cheerleading, dance, tumble, and/or stunting*.

15        87.    Defendants are well aware of the existence of the contracts between
16   PCC and each student that is enrolled with PCC for *instruction, coaching, and*
17   *training competitive and noncompetitive cheerleading, dance, tumble, and/or*
18   *stunting* because Defendants have been employees of PCC for several years and
19   have had ample opportunity to observe how PCC is managed and how PCC
20   operates.

21        88.    On information and belief, Defendants are interfering with those
22   contracts by engaging the students that are enrolled in the Irvine branch location of
23   PCC with new contracts that purport to be between the student and PCC, but then
24   Defendants are converting the resultant revenue as if the students had contracted
25   with Defendants' newly created limited liability company, SCCC.

26        89.    Alternatively, on information and belief, that Defendants are
27   presenting students that are enrolled in the Irvine branch location of PCC with
28   contracts that purport to be between SCCC and the students which is intentionally

1 | designed to be disruptive to the ongoing contractual relationships between PCC
2 | and the students that are enrolled in the Irvine branch location of PCC.

3 |    90.    Either way, Defendants' interference with PCC's contractual
4 | relationships with the students that are enrolled in the Irvine branch location of
5 | PCC is intentional, disruptive, and is substantially certain to result in damaging
6 | interference with the contractual relationship between PCC and the students
7 | enrolled in the Irvine branch location of PCC.

8 |    91.    Plaintiffs are being harmed by Defendants intentional disruption of
9 | the contractual relationship between PCC with and the students enrolled in the
10 | Irvine branch location of PCC because Defendants are attempting to
11 | commandeering the Irvine branch location of PCC by either recruiting all the
12 | students enrolled in the Irvine branch location of PCC to Defendants' newly
13 | created company, SCCC, or continuing to operate as the Irvine branch location of
14 | PCC but failing to remit any of the revenue collected from the enrolled students to
15 | PCC.

16 |    92.    Plaintiffs have no remedy at law and will continue to be harmed by
17 | Defendants' intentional disruption of the contracts relationship between PCC and
18 | the students enrolled in the Irvine branch location of PCC unless the Court enjoins
19 | Defendants tortious behavior.

20 |    93.    Defendants' intentional engagement of the students that are enrolled
21 | in the Irvine branch location of PCC with new contracts and failure to remit the
22 | resultant revenue to PCC is a substantial factor in the disruption of the contractual
23 | relationship between PCC and the students enrolled in the Irvine branch of PCC.

**COUNT VIII**
**INTENTIONAL INTERFERENCE WITH**
**PROSPECTIVE ECONOMIC RELATIONS**

24 |
25 |
26 |
27 |    94.    Plaintiffs repeat and incorporate by reference the allegations contained
28 | in paragraphs 1 through 93 as if fully set forth herein.

95.     For several years, Plaintiffs have engaged in annual contracts with
each student that is enrolled with PCC for *instruction, coaching, and training
competitive and noncompetitive cheerleading, dance, tumble, and/or stunting*.

96.     The economic relationship between PCC and the students enrolled in
the Irvine branch location of PCC would likely have resulted in a prospective
future economic benefit to PCC because each student pays PCC tuition for the
*instruction, coaching, and training competitive and noncompetitive cheerleading,
dance, tumble, and/or stunting*, and many students continue to enroll with PCC
year after years for several consecutive years.

97.     Defendants are well aware of the existing contracts between PCC and
each student that is enrolled with PCC for *instruction, coaching, and training
competitive and noncompetitive cheerleading, dance, tumble, and/or stunting*
because Defendants have been employees of PCC for several years and have had
ample opportunity to observe how PCC is managed and how PCC operates.

98.     On information and belief, Defendants are interfering with those
contracts by engaging the students that are enrolled in the Irvine branch location of
PCC with new contracts that purport to be between the student and PCC, but then
Defendants are converting the resultant revenue as if the students had contracted
with Defendants' newly created limited liability company, SCCC.

99.     Alternatively, Defendants are presenting students that are enrolled in
the Irvine branch location of PCC with contracts that purport to be between SCCC
and the students which is behavior that is intentionally designed to be disruptive to
the prospective economic relationship between PCC and the students that are
enrolled in the Irvine branch location of PCC because they are being recruited
away from PCC to Defendants' newly formed company SCCC from within the
Irvine branch of PCC.

100.   Either way, Defendants' behavior toward the students that are enrolled
in the Irvine branch location of PCC is intentional, disruptive, and is substantially

certain to result in damaging interference with the prospective economic
relationship between PCC and the students enrolled in the Irvine branch location of
PCC.

101.   Plaintiffs are being harmed by Defendants intentional disruption of
the prospective economic relationship between PCC and the students enrolled in
the Irvine branch location of PCC because Defendants are attempting to
commandeering the Irvine branch location of PCC by either recruiting all the
student enrolled in the Irvine branch location of PCC to Defendants' company
SCCC, or continuing to operate as PCC but refusing to remit any of the revenue
collected from the students enrolled in the Irvine branch location of PCC.

102.   Plaintiffs have no remedy at law and will continue to be harmed by
Defendants' intentional disruption of the prospective economic relationship
between PCC and the students enrolled in the Irvine branch location of PCC unless
the Court enjoins Defendants tortious behavior.

103.   Defendants' intentional engagement of the students that are enrolled
in the Irvine branch location of PCC with new contracts and failure to remit the
resultant revenue is a substantial factor in the disruption of the prospective
economic relationship between PCC and the students enrolled in the Irvine branch
of PCC.

## COUNT IX
## COVERSION

104.   Plaintiffs repeat and incorporate by reference the allegations contained
in paragraphs 1 through 103 as if fully set forth herein.

105.   Plaintiffs are the owners of the Irvine branch location of PCC and are
therefore entitled to the revenue collected from the students enrolled in the Irvine
branch location of PCC.

106.   Defendants are operating the Irvine branch location of PCC,
presenting themselves the world as associated with PCC, using the PCC

Trademarks, and generally benefiting from the goodwill and reputation of PCC, all the while unlawfully misappropriating and converting the revenue generated by the Irvine branch location of PCC for themselves.

107.  Defendants are using mats and other equipment that was purchased by and owned by PCC without authorization or permission, and therefore, have converted the mats and other equipment.

108.  Defendants were previously operating out of a building leased by PCC and denied Cheslie Horton entry and told her not to return, thereby converting the use of enjoyment of the commercial property leased by PCC.

109.  Defendant were operating under an insurance policy paid for by PCC thereby unfairly and unlawfully exposing PCC to potential liability, all the while misappropriating and converting the revenue generated by the Irvine branch location of PCC for themselves.

110.  PCC did not consent to Defendants' misappropriating the revenue generated by the Irvine branch of PCC or to Defendants exclusive use of PCC's mats, other equipment, and commercial building leased by PCC.

111.  Each of Defendants unlawful acts have harmed PCC by denying PCC of revenue that rightly belongs to PCC, by denying PCC the use and enjoyment of its mats, other equipment, and access to commercial property that PCC leased, and by unfairly and unlawfully exposing PCC to potential liability.

112.  Defendant willful and intentional acts were a substantial factor in causing the harm suffered by PCC.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully requests the following relief;

A.      A permanent injunction prohibiting Defendants, their officers, directors, agents, principals, divisions, representatives, servants, employees, associates, subsidiaries, affiliates, attorneys, successors and assigns, and all persons acting by, through, under or in active concert or in participation with or controlled, either directly or indirectly, by any of them, from using the trademarks PACIFIC COAST MAGIC and PCM, or any confusingly similar variation thereof, as, or as a component of, a trademark, trade name or otherwise, in connection with the advertising, promoting, marketing, offering, selling similar goods in the United States, and from otherwise infringing the U.S federal trademark registration nos.: 4674678 or 4678045 or the PCC's Trademarks;

B.      An accounting for all profits acquired by Defendants through sales of goods or services in conjunction with the unlawful use of U.S federal trademark registration nos.: 4674678 or 4678045 and the PCC's Trademarks and an award of such profits;

C.      An award of $500,000 for damage to the goodwill and reputation of Plaintiffs' federally registered trademarks PACIFIC COAST MAGIC and PCM, reg. nos.: 4344274 or 4346291, respectively;

D.      An award of statutory damages in accordance with 15 U.SC. § 1117(c)(2) of $2,000,000 per counterfeit mark per type of product sold, offered for sale, or distributed;

E.      An award of treble damages or other enhanced monetary remedies to Plaintiffs;

F.      An award of attorneys' fees and cost to Plaintiffs; and

G.      Any such further relief as the Court may deem just and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, demand is hereby made for trial by jury on all issues triable to a jury.

Dated this 7th day of September, 2021

By: _____

Kevin M. Welch, Esq. (SBN 254565)

LAW OFFICE OF KEVIN M. WELCH
P.O. Box 494
Hermosa Beach, CA 90245
Tel.: (310) 929-0553
Email:Kevin@kmwlawoffice.com
Attorney for Plaintiff,
Pacific Coast Cheer, Inc., *et al*.